THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. STEVEN CATALANOTTE, Appellant.— Judgment of the Supreme Court, Kings County, rendered December 15, 1971, affirmed. No opinion. Hopkins, Acting P. J., Munder, Martuscello and Christ, JJ., concur; Gulotta, J. dissents and votes to reverse and grant a new trial, with the following memorandum: Defendant, a probationary policeman, was indicted for, and convicted of, criminally selling a dangerous drug in the third degree, criminal possession of a dangerous drug in the fourth degree and three counts of criminal possession of a dangerous drug in the sixth degree. He was sentenced to a term not exceeding 10 years for the criminal selling, to a concurrent maximum term of five years for the fourth degree possession count and to unconditional discharges on the remaining three counts. He was 21 years of age at the time the acts in question took place. On the trial an undercover police officer testified that an informer had introduced him to defendant and that he later met defendant by previous

arrangement and entered the latter's parked automobile, where defendant sold him 50 packets of heroin for $170. Three members of his police back-up team substantially corroborated his testimony, except that they did not witness the exchange of money and heroin inside the parked car. Defendant called the informer, who as a hostile witness corroborated the testimony of the under-cover officer except that he too did not witness the actual exchange of money and heroin. Defendant had subpoenaed the informer's police record, but it was not delivered until the latter portion of the trial, after the informer had finished testifying. It showed that the informer had been arrested three times for possessing drugs, that the last of these arrests had been made by one member of the back-up team who on five occasions failed to appear in court against him and that the case was dismissed for lack of prosecution about six weeks after the informer arranged the meeting between defendant and the undercover officer who testified he had made the purchase in the present case. Upon receipt of this late information defendant asked the trial court's permission to recall the informer and the back-up team member to inquire whether the latter had deliberately defaulted as part of a deal in exchange for the informer's help in "setting up" defendant and to establish a "deal" to "frame" him. The court refused to let defendant recall the police officer since the case in question had been dismissed and was a collateral issue. Defendant was allowed to recall the informer and question him about the other two drug cases but not as to whether the officer had agreed to "throw" the case that was eventually dismissed in return for the informer's testimony in the present case. I consider this error. Defendant's purpose in recalling these two witnesses was to inquire into the existence of a "deal" to "frame" him. If he could prove he had been "framed" it would necessarily follow that he did not sell the heroin to the undercover police officer and that the People's testimony to that effect was false. Clearly, the recall of these witnesses affected defendant's substantial rights. Additionally, on cross-examination the prosecutor elicited from defendant that his income was some $9,000 per year, that he lived with his mother and con-tributed $80 a month to the support of the household, that his sister and brother also contributed and that his mother was a housewife and did not work. He then questioned defendant as to a number of bank accounts amounting to approximately $39,000 in the names of his mother, his sister, also in trust for defendant, or various combinations of their joint names. Defendant testified this was a surprise to him and asked the court's permission to call his mother to testify as to the dates when these accounts were started and the source of the funds (apparently she was prepared to show she had inherited the money from her parents and her deceased husband), but the court refused permission on the ground that it was collateral matter. I consider this also an erroneous ruling. The prosecutor made this an issue in the case and it assumed an important role since the only purpose of such examination was to show or infer that these were ill-gotten gains. The issue of credibility was crucial and the unexplained bank accounts cast an aura of prejudice about defendant by virtue of their size and the implicit suggestion that he had earned this money through the sale of narcotics or some other illicit activity. As was stated in Corpus Juris Secundum (98 C. J. S., Witnesses, § 419, subd. c, p. 223): "On redirect examination a witness may properly be interrogated as to facts, circumstances or any matter tending to refute, weaken, or remove inferences, impressions, implications, or suggestions which might result from testimony or inquiries on cross-examination". (See, also, *People* v. *Swingle*, 28 A D 2d 1063.) Clearly, the refusal to let defendant's mother testify prejudiced his substantial rights. In my opinion the errors mentioned are too substantial and prejudicial

to be disregarded under CPLR 470.05 and a new trial is therefore required in the interests of justice.